**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

George Daum,

                Plaintiff,

                                      Civ. No. 08-4875 (RHK/JJG)
                                      **MEMORANDUM OPINION
                                      AND ORDER**

v.

Planit Solutions, Inc.,

                Defendant.

---

Michael F. Cockson, Elizabeth L. Taylor, Faegre & Benson LLP, Minneapolis, Minnesota, for Plaintiff.

John M. Monahan, Scott P. Horton, Jaeckle, Fleischmann & Mugel, LLP, Buffalo, New York, David A. Allgeyer, Christopher R. Smith, Lindquist & Vennum PLLP, Minneapolis, Minnesota, for Defendant.

---

This action arises out of the termination of Plaintiff George Daum's employment by his former employer, Defendant Planit Solutions, Inc. ("Planit"). Planit now moves to dismiss several of Daum's claims. For the reasons set forth below, the Court will grant Planit's Motion in part and deny it in part.

## BACKGROUND

Daum previously worked for Planit, an Alabama corporation engaged in computer-assisted design and manufacturing, as head of its global Wood Division. Through several successive layers of ownership, Planit is a subsidiary of Velocity Holdings Limited ("Velocity"), a company based in the United Kingdom.

In September 2006, Daum paid £100,000 to purchase a 4% interest in Velocity. Under Velocity's bylaws, a person who owns Velocity stock and who is employed by the company or one of its subsidiaries (including Planit) is deemed either a "Good Leaver" or "Bad Leaver" when his employment terminates. "Good Leavers" are persons employed by the company for at least two years following their purchase of Velocity shares and whose employment ends because of death, disability, or "dismissal other[] than for reasonable cause." (Am. Compl. Ex. A § 2.) "Bad Leavers" are all employees who are not "Good Leavers." (Id.) Hence, an employee terminated for cause, or one who is not employed for at least two years following the purchase of his shares of Velocity stock, automatically is deemed a "Bad Leaver."

Whether an employee is a "Good Leaver" or a "Bad Leaver" is critical to the return on his investment. At the termination of employment, an employee can be required to transfer his shares back to Velocity. (Id. § 10.1.) A "Good Leaver" is entitled to the market value of his shares on the date of termination, while a "Bad Leaver" receives the lesser of market value *or* the amount paid for the shares. In other words, if an employee's shares appreciate in value after they are purchased, a "Good Leaver" receives that appreciation, while a "Bad Leaver" does not.

In December 2006, as part of a restructuring, Daum signed an Employment Agreement with Planit. (Am. Compl. Ex. D.) The agreement provided that Daum was an at-will employee, with his employment terminable "by either Daum or Planit at any time." (Id. ¶ 1.) Nevertheless, if his employment were terminated without "Cause" under

the Employment Agreement, he would be entitled to certain severance benefits.  (Id. ¶¶ 6(f), 11(f).)  "Cause" is defined in various ways, including conviction of a crime, a declaration of bankruptcy, or failure to adequately perform relevant job duties.  (Id. ¶ 11(a).)

According to Daum, his job performance was excellent and he succeeded in expanding Planit's woodworking business.  (Am. Compl. ¶¶ 20-22.)  On June 2, 2008, he met with Velocity's CFO in Tuscaloosa, Alabama, who informed Daum that his Velocity shares had appreciated in value to approximately $2.1 million.  (Id. ¶ 26.)  At that point, he was three months away from the two-year demarcation line between "Good Leavers" and "Bad Leavers."  That is, if Daum had remained employed for approximately three more months and then voluntarily resigned, he would have been entitled to the full market value of his shares.

Daum, however, alleges that Planit concocted a reason to terminate his employment in order to prevent him from realizing that appreciation in value.  He was fired on June 26, 2008, ostensibly due to his "fail[ure] to carry out [his] duties under the Employment Agreement and engag[ing] in unacceptable work performance."  (Am. Compl. Ex. C.)  Because he was terminated for "Cause," he was not paid severance under the Employment Agreement.

On September 11, 2008, Daum was informed by Velocity that he was required to transfer his shares back to the company.  (Id. Ex. F.)  Since he had not reached the two-year anniversary of his stock-purchase date when his employment ended, he was deemed

a "Bad Leaver" and would receive only £100,000 for his shares – the amount of his original investment.  Daum refused to execute the transfer, but Velocity nevertheless tendered him £100,000 and sold his shares.[1]

Daum then commenced the instant action, in which he asserts five claims against Planit: declaratory judgment that Planit lacked "Cause" for his termination (Count I); declaratory judgment that several restrictive covenants in the Employment Agreement are overbroad, and injunctive relief enjoining their enforcement (Count II); defamation (Count III); breach of contract (Count IV); and tortious interference with prospective economic advantage (Count V).  The crux of Daum's claims is that his allegedly poor performance was a pretext for Planit to terminate his employment in order to avoid paying him severance and the appreciated value of his Velocity shares.  Planit now moves to dismiss several of Daum's claims.[2]

## STANDARD OF DECISION

The recent Supreme Court case of Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), sets forth the standard to be applied when evaluating a motion to dismiss under Rule 12(b)(6).  To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face."  Id. at 1974.  Stated differently, a

---

[1] The Amended Complaint alleges that these funds were "transferred" to Daum (Am. Compl. ¶ 46), but it does not specify how that transfer occurred or whether Daum kept the money.

[2] Planit has not challenged the defamation claim (Count III) and seeks to dismiss the breach-of-contract claim (Count IV) only in part, as set forth in more detail below.

plaintiff must plead sufficient facts "to provide the 'grounds' of his 'entitle[ment] to relief,' [which] requires more than labels and conclusions, and [for which] a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (citation omitted). Thus, a complaint cannot simply "le[ave] open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery." Id. at 1968 (citation omitted). Rather, the facts set forth in the complaint must be sufficient to "nudge[] the[] claims across the line from conceivable to plausible." Id. at 1974.

When reviewing a motion to dismiss, the complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. Id. at 1964-65. A complaint should not be dismissed simply because a court is doubtful that the plaintiff will be able to prove all of the factual allegations contained therein. Id. Accordingly, a well-pleaded complaint will survive a motion to dismiss "'even if it appears that a recovery is very remote and unlikely.'" Id. at 1965 (citation omitted).

## ANALYSIS

I. **The declaratory-judgment claims**

A. **Count I**

Planit argues that Count I – which seeks a declaration that it lacked "Cause" for Daum's termination – must be dismissed because "pretextual termination is not recognized under applicable law as a stand-alone tort claim with respect to an at-will employee." (Def. Mem. at 8.) This argument is unavailing, because Planit

misapprehends the nature of Count I.

Planit's confusion is understandable. Daum dodges and parries throughout his brief, alternately describing Count I as a tort claim (see Mem. in Opp'n at 15) and a contract claim (see id. at 17 & n.2). Nevertheless, Count I simply requests a declaration that Planit breached the Employment Agreement when it terminated his employment for "Cause," because no such "Cause" actually existed. (See Am. Compl. ¶ 51 (asking for declaration that Planit "had no 'Cause' to terminate Plaintiff under [the] Employment Agreement . . . and that Plaintiff is, accordingly, entitled to all benefits . . . to which he would be entitled under the Employment Agreement had he been terminated without cause").) It is not a tort claim, notwithstanding the confusing arguments in Daum's brief. Nor does Count I allege a claim for "bad faith" breach of the Employment Agreement, as Planit seems to believe. (See Def. Mem. at 8.) Accordingly, Planit's cited authorities – which discuss the improper "conversion" of a breach-of-contract claim into a tort claim – do not support dismissal of this claim.

Nevertheless, Count I shall be dismissed because it is duplicative of the breach-of-contract claim (Count IV).[3] At its core, Count I asks the Court to declare that Planit breached the Employment Agreement by falsely terminating Daum for "Cause." When a request for a declaratory judgment "alleges . . . duties and obligations under the terms of a contract and asks the court to declare those terms breached[, it] is nothing more than a

---

[3] Planit did not raise this issue in its brief, but asked for dismissal on this basis at oral argument.

petition claiming breach of contract." Amerisure Mut. Ins. Co. v. Maschmeyer Landscapers, Inc., No. 4:06CV1308, 2007 WL 2811080, at *2 (E.D. Mo. Sept. 24, 2007). Accordingly, it is subject to dismissal. See id.; StreamCast Networks, Inc. v. IBIS LLC, No. CV 05-4239, 2006 WL 5720345, at *4 (C.D. Cal. May 2, 2006) (collecting cases).[4]

### B.     Count II

In his other declaratory-judgment claim (Count II), Daum challenges two non-competition provisions and a non-disparagement provision in his Employment Agreement. (See Am. Compl. ¶¶ 53-56.) He seeks a declaration that these restrictive covenants are unenforceable and further requests injunctive relief enjoining their enforcement. (Id. ¶¶ 60-61.)

As Planit correctly points out, however, the non-competition provisions were in force for only six months following the termination of Daum's employment and, hence, have expired. For this reason, Daum admits that "the time to enforce them through a motion for injunctive or declaratory relief has come and gone." (Mem. in Opp'n at 29.) Accordingly, Count II will be dismissed insofar as it concerns the non-competition provisions in the Employment Agreement.

As for the non-disparagement provision, Planit did not challenge that provision in its brief. At oral argument, however, it asserted for the first time that there is no live

---

[4] Because the Court concludes that Count I is duplicative of Count IV, it does not reach Planit's argument that Count I is moot because it does not allege "any loss that can be avoided through the use of declaratory . . . remedies." (Def. Mem. at 15.)

controversy between the parties because Planit has never sought to enforce this provision – in other words, the claim is unripe. The Court agrees.

"The ripeness doctrine applies to declaratory judgment actions." Pub. Water Supply Dist. No. 8 of Clay County, Mo. v. City of Kearney, Mo., 401 F.3d 930, 932 (8th Cir. 2005). Before such a claim is ripe for adjudication, the plaintiff "must face an injury that is 'certainly impending.'" Id. (quoting Pennsylvania v. W. Va., 262 U.S. 553, 593 (1923)). The allegations in Daum's Amended Complaint do not support the conclusion that he faces "impending injury" from the non-disparagement provision. Indeed, those allegations are framed in hypothetical terms – the provision "*could* preclude" him from addressing a prospective employer's concerns about his termination (Am. Compl. ¶ 56 (emphasis added)), and "*would* effectively preclude" him from responding to job overtures (id. ¶ 57 (emphasis added)). Nowhere does the Amended Complaint allege that he has failed to respond to such overtures or requests for information regarding his termination because of the non-disparagement provision. Indeed, he does not even allege that he has sought, or plans to seek, alternate employment. As currently pleaded, therefore, this portion of Count II had not "matured enough to warrant judicial intervention" and is unripe. Paraquad, Inc. v. St. Louis Hous. Auth., 259 F.3d 956, 958 (8th Cir. 2001).

## II.    The tortious-interference claim

Planit next argues that Daum's tortious-interference claim (Count V) must be dismissed because Daum was an at-will employee, meaning it could terminate his

employment at any time, for any reason.  Since it "lawfully" terminated Daum's employment, Planit argues that such termination "cannot serve as the basis for a tort" claim.  (Def. Mem. at 10.)  The Court does not agree.

At the outset, the Court rejects Daum's disingenuous argument that Magistrate Judge Graham okayed this claim when she granted him leave to assert it.  The transcript of the hearing on Daum's Motion for Leave to Amend makes abundantly clear that Judge Graham *declined* to consider the merits of the claim, and in fact *invited* Planit to move to dismiss it.  (See 2/17/09 Hear. Tr. (Doc. No. 30) at 29-31.)

Turning to the merits, in order to establish a claim for tortious interference with prospective economic advantage under Minnesota law,[5] a plaintiff must prove five elements: (1) the existence of a reasonable expectation of economic advantage belonging to the plaintiff; (2) the defendant's knowledge of that expectation; (3) the defendant's wrongful interference with that expectation; (4) a reasonable probability that the plaintiff would have realized the expectation absent the defendant's conduct; and (5) damages. E.g., Benfield, Inc. v. Moline, Civ. No. 04-3513, 2006 WL 452903, at *11 (D. Minn. Feb. 22, 2006) (Davis, J.) (quoting Harbor Broad., Inc. v. Boundary Waters Broadcasters, Inc., 636 N.W.2d 560, 569 (Minn. Ct. App. 2001)); Oak Park Dev. Co. v. Snyder Bros. of Minn., Inc., 499 N.W.2d 500, 505 (Minn. Ct. App. 1993).  The crux of Planit's argument concerns element 3 – because Daum was an at-will employee, Planit cannot have

---

[5] Both parties agree that Daum's tort claims are governed by Minnesota law.

"wrongfully" interfered with his legitimate economic expectations by terminating his employment.

But Planit cannot hide its actions behind the at-will employment doctrine. Both Minnesota state and federal courts have recognized the existence of a tort claim where an employer acts in bad faith to deprive one of its employees of expected economic benefits. See, e.g., Buysse v. Paine, Webber, Jackson & Curtis, Inc., 623 F.2d 1244, 1249 (8th Cir. 1980) (applying Minnesota law) ("[A]n employee who is working under an employment contract which is terminable at will cannot be cut off from his entitlement to future compensation if his discharge is in bad faith."); Holman v. CPT Corp., 457 N.W.2d 740, 744 (Minn. Ct. App. 1990) ("A dismissal which is designed to avoid the payment of commissions to an employee will constitute bad faith entitling an employee to relief."); Bratton v. Menard, Inc., 438 N.W.2d 116, 119 (Minn. Ct. App. 1989). That is precisely what Daum has alleged here. The essence of his claim is that Planit, in a carefully calculated effort to avoid paying market value for his Velocity shares, manufactured "Cause" for his termination. Accepting the facts pleaded in the Amended Complaint as true, which the Court must at this juncture, Daum has stated a valid tort claim. See Buysse, 623 F.2d at 1249.

On the surface, this conclusion might seem at odds with the many Minnesota cases holding that there exists no implied covenant of good faith and fair dealing in employment contracts under Minnesota law. E.g., Brozo v. Oracle Corp., 324 F.3d 661, 668 (8th Cir. 2003) (applying Minnesota law). Stated differently, if there is no obligation

to act in good faith when performing an employment contract, how can there be a tort claim for "bad faith" termination of an employee? But the Court's conclusion is in no way predicated on finding an implied covenant of good faith here. Rather, the Court holds only that an employer may not engage in bad faith conduct intended to deprive an employee of expected economic benefits. It makes no difference what that conduct might be, whether it is wrongfully sabotaging an employee's plans to set up his own business or, as in this instance, firing an employee for the sole purpose of depriving him of the appreciated value of company stock. Planit was precluded from taking *any* action in bad faith to deprive Daum of his expected economic gain. See Benfield, 2006 WL 452903, at *11 (tort claim lies where defendant "wrongful[ly] interfere[s]" with plaintiff's reasonable economic expectation). It just so happens that, in this case, the allegedly bad-faith action undertaken by Planit was the termination of Daum's employment. Under these circumstances, the at-will employment doctrine does not shield Planit's actions from the reach of Minnesota tort law.[6]

Planit further argues that Daum could not have had a "reasonable expectation of

---

[6] Admittedly, it is difficult (if not impossible) to reconcile Buysse, Holman, and Bratton – permitting claims against employers for bad-faith terminations designed to avoid payments to employees – with the cases holding that no implied covenant of good faith and fair dealing exists in employment contracts under Minnesota law. At oral argument, Planit attempted to distinguish these cases by arguing that they involved terminations designed to cut off compensation earned during the employment relationship, whereas Daum's investment in Velocity arose outside of his employment relationship with Planit. The Court cannot agree. As discussed above, Daum's entitlement to market value for his Velocity shares, and whether he was a "Good Leaver" or a "Bad Leaver," is intimately connected to (and defined by) his employment with Planit. (See supra at 2.)

economic advantage," because he was an at-will employee who could be fired at any time, including within two years of the purchase of his Velocity shares. (Def. Mem. at 12.) But the timing of Daum's termination – three months short of crossing the line distinguishing "Good Leavers" from "Bad Leavers" – may reasonably be considered suspicious. It apparently came as a surprise to Daum, who alleges that his job performance had been excellent and that he had no reason to suspect his employment might be terminated. (See Am. Compl. ¶¶ 20-30.) In fact, Daum alleges that Planit failed to comply with the Employment Agreement's terms, insofar as it required the company to provide him with a written warning and the opportunity to "cure" any deficiencies in his performance prior to terminating his employment. (Id. ¶¶ 31-36.) Accepting these facts as true, one could conclude that Daum had a reasonable expectation of remaining employed by Planit for the remaining few months necessary to cross the two-year line, notwithstanding his at-will status.

For all of these reasons, the Court determines that Daum has validly pleaded a tortious-interference claim.

**III. The request for consequential damages**

In his breach-of-contract claim (Count IV), Daum seeks two types of damages: severance purportedly due under the Employment Agreement, and consequential damages for "the loss of the fair value of his shares in Velocity." (Am. Compl. ¶¶ 67-68.) Planit argues that the Court must dismiss the consequential-damages portion of this claim because such damages are not available. (Def. Mem. at 12-14.) Planit's arguments are unavailing.

Alabama courts[7] routinely recognize the availability of consequential damages for breach of contract. See, e.g., Pate v. Rollison Logging Equip., Inc., 628 So. 2d 337, 345 (Ala. 1993); Crommelin v. Montgomery Indep. Telecasters, Inc., 194 So. 2d 548, 551 (Ala. 1967); Chase v. Holt, 752 So. 2d 498, 498-99 (Ala. Civ. App. 1999). "The general rules of contract provide that damages should return the injured party to the position he would have been in had the contract been fully performed and that these damages are generally those that flow naturally from the breach." Pate, 628 So. 2d at 345 (internal quotation marks, alterations, and citation omitted); accord E. River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 874 (1986) ("[C]onsequential damages . . . [must] be a foreseeable result of the breach."). Here, Daum alleges that Planit intentionally (and with knowledge) terminated his employment for "Cause" under the Employment Agreement when no such "Cause" actually existed, in order to deprive him

---

[7] The Employment Agreement is governed by Alabama law.

of the appreciated value of his Velocity shares. If Daum succeeds in proving these allegations, he will have shown that consequential damages – the lost value of his shares – "flow[ed] naturally from" Planit's breach; indeed, the crux of this case is Daum's allegation that Planit *intended* that result. Id. Accordingly, Daum would be entitled to recover such damages under his breach-of-contract theory if he is able to adduce sufficient evidence in support of this claim.

The Court notes, however, that the consequential damages Daum seeks in Count IV (breach of contract) are the same damages he seeks in Count V (tortious interference). And, the supporting facts alleged in the Amended Complaint are the same for those two claims: Planit's purported decision to pretextually terminate Daum's employment for "Cause." Alabama courts do not permit a plaintiff to "double recover" where, as here, "the underlying factual bases for recovery state a number of different claims which [can be] separately enforced." Benefield v. Aquaslide N Dive Corp., 406 So. 2d 873, 875 (Ala. 1981) (citation omitted). Minnesota courts are in accord. See, e.g., Hanks v. Hubbard Broad., Inc., 493 N.W.2d 302, 308 (Minn. Ct. App. 1992) ("To recover under theories of both contract and tort, a plaintiff must prove separate damages for [each].").

Nevertheless, this repetition does not require dismissal of Daum's request for consequential damages as part of his breach-of-contract claim. While Daum will have to prove separate damages *at trial* in order to avoid double recovery, at this juncture he is entitled to *allege* parallel claims for the same harm. See Mitchell v. Franklin Bank, S.S.B., Civ. No. 05-1320, 2005 WL 2406034, at *2 (D. Minn. Sept. 29, 2005)

(Magnuson, J.).

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Planit's Motion to Dismiss (Doc. No. 31) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The Motion is **GRANTED** as to Count I of the Amended Complaint (Doc. No. 26), and that Count is **DISMISSED WITH PREJUDICE**;

2. The Motion is **GRANTED** as to Count II of the Amended Complaint. Insofar as it concerns the non-competition provisions in the Employment Agreement, Count II is **DISMISSED WITH PREJUDICE**. Insofar as it concerns the non-disparagement provisions in the Employment Agreement, Count II is **DISMISSED WITHOUT PREJUDICE**; and

3. In all other respects, the Motion is **DENIED**.


Dated: May 28, 2009                                    s/Richard H. Kyle
                                                       RICHARD H. KYLE
                                                       United States District Judge